IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PATRICK ROBINSON,<br><br>  Plaintiff,<br><br>vs.<br><br>BRIDGEPORT EDUCATION ASSOCIATION and NEBRASKA STATE EDUCATION ASSOCIATION,<br><br>  Defendants. | 8:16-CV-402<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the "Motion to Abstain or Stay Proceedings, or Modify Progression Order" (filing 20) filed by the defendants, the Bridgeport Education Association (BEA) and the Nebraska State Education Association (NSEA) (collectively, the Unions). The Unions' motion will be denied with respect to abstaining from exercising jurisdiction or staying the case, and the request to modify the progression order will be referred to the United States Magistrate Judge.

BACKGROUND

The plaintiff, Patrick Robinson, was an employee of the Bridgeport Public Schools (BPS). Filing 1 at 2. He was also a member of the Unions. Filing 1 at 2. But after some personal and work-related conflicts with other BPS employees, Robinson was suspended by the superintendent of the BPS. Filing 1 at 8. The Bridgeport Board of Education held a hearing and decided to cancel Robinson's employment. Filing 22-2.

Robinson filed a petition in error in the District Court for Morrill County, Nebraska, in which he appealed from the Board's decision to cancel his employment. Filing 22-3. He filed a separate complaint in Morrill County District Court against BPS and the Board, alleging violations of the Nebraska Open Meetings Act, Neb. Rev. Stat. § 84-1407 *et seq*. Filing 22-7 at 1-6. He also filed a charge of discrimination against the BEA with the Nebraska Equal Opportunity Commission (NEOC) and U.S. Equal Opportunity Commission (EEOC). Filing 1 at 15. And, after the EEOC issued a right-to-sue letter, he filed suit in federal court in separate cases against the Board and the Unions. Filing 1; *see* case no. 8:16-cv-177.

In this case, against the Unions, Robinson generally alleges that the Unions conspired with the Board to have his employment canceled. Filing 1. He alleges that the Union's representatives acted to retaliate against him for his NEOC charge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., resulting in his suspension and then the cancellation of his employment. Filing 1 at 9-10. He also alleges that the Unions colluded to hold a members-only meeting from which only Robinson and one other union member were excluded, and that the events of that meeting and some subsequent emails tortiously interfered with Robinson's employment relationship with BPS. Filing 1 at 10-11. And, he alleges that the Unions negligently breached their duty to represent him when they denied him union representation, resulting in the loss of his job and "emotional distress and humiliation." Filing 1 at 12.

Meanwhile, back in state court, on January 5, 2017, the Morrill County District Court issued its Ruling on Appeal with respect to Robinson's petition in error, affirming the Board's decision to cancel Robinson's employment.

Filing 22-4. The court rejected Robinson's claim that his due process rights had been violated, and found that

> Robinson's conduct was clearly insubordinate and unprofessional. He created an adversarial environment in which he was difficult to supervise, and in which he refused to follow directions of his supervisors who had clear authority to direct him. He refused to meet with his supervisors without union representation — which may not be a contract violation in itself, but demonstrates an insubordinate attitude. His strong suspicion of other teachers being unsupportive of him, and his refusal to make himself available to teachers in their classrooms affected his ability to competently perform his duties as a curriculum director.

Filing 22-4. So, the court found "no error in any of the board's findings or decisions" and "no merit in any of the thirty-two noted errors" in Robinson's petition in error. Filing 22-4 at 2. Robinson appealed to the Nebraska Court of Appeals. Filing 22-5. That appeal is still pending.

## DISCUSSION

The Unions move the Court to abstain from exercising subject-matter jurisdiction (essentially, to dismiss the case) based on the *Rooker-Feldman* doctrine. *See*, *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.,* 263 U.S. 413 (1923). Alternatively, they ask the Court to stay the case based on the *Colorado River* doctrine. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1 (1983). Finally, they ask the Court to extend the case progression schedule.

## *ROOKER-FELDMAN* DOCTRINE

*Rooker-Feldman* holds that federal district courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840 (8th Cir. 2017). The Unions contend that the Morrill County District Court's ruling in Robinson's appeal from the cancellation of his employment is such a state-court judgment.

Robinson is a state court loser, and his alleged damages are at least arguably the result of a state-court judgment. *See Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 754-55 (8th Cir. 2010). But there is a problem with the Unions' argument: the Eighth Circuit has held that a state proceeding is not complete for *Rooker-Feldman* purposes until the appellate process is complete. *See Dornheim v. Sholes*, 430 F.3d 919, 923-24 (8th Cir. 2005); *see also Stebbins v. Harp & Assocs., LLC*, 586 F. App'x 682 (8th Cir. 2013). Plainly, this case was commenced before the state-court proceedings were complete, because the state-court proceedings are *still* not complete: this case was, in fact, filed before the state court even ruled on Robinson's petition in error. So, "any effect that the state court rulings might have on this federal action is limited to the application of preclusion law," and the Court has not been divested of jurisdiction. *See Dornheim*, 430 F.3d at 924.

## *COLORADO RIVER* ABSTENTION

The *Colorado River* doctrine "permits federal courts to decline to exercise jurisdiction over cases where parallel state court litigation is pending, meaning that there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."

*Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1121 (8th Cir. 2015).

> This rule is based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. Nevertheless, federal courts have a virtually unflagging obligation to exercise the jurisdiction given them, which does not evaporate simply because there is a pending state court action involving the same subject matter. Rather, *Colorado River* abstention is appropriate only in exceptional circumstances where the surrender of federal jurisdiction is supported by the clearest of justifications.

*Id.* (citations and quotations omitted).

But "as a necessary premise of *Colorado River* abstention, 'there must be pending parallel state and federal court proceedings before *Colorado River* is implicated.'" *United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010) (quoting *Fru–Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009)). And "[w]hile the prevailing view is that state and federal proceedings are parallel for purposes of *Colorado River* abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court," the Eighth Circuit requires more precision. *Id.* "A substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* Determining whether parallel proceedings exist involves comparing the sources of law, required evidentiary showings, measures of damages, and treatment on appeal for each claim. *Cottrell v. Duke*, 737 F.3d

1238, 1245 (8th Cir. 2013). And "[w]hen any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize *Colorado River* to refuse its jurisdiction." *Id.*

In this case, the state and federal proceedings do not have substantially similar parties. The Unions are not parties to the pending state-court proceedings. *See Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005). And while the issues in each proceeding may be related, that "does not compel a conclusion that the suits are parallel": there are issues potentially implicated in the state-court proceedings that are not implicated here, and there are issues here relating to the Unions' allegedly wrongful conduct that are not implicated in state court. *See id.*; *see also Cottrell*, 737 F.3d at 1245. There are, in other words, doubts about the parallel nature of the concurrent proceedings—and, that being the case, the Court cannot refuse its jurisdiction. *Cottrell*, 737 F.3d at 1245.

Furthermore, even if parallel proceedings were pending, the exceptional circumstances warranting abstention are lacking. The Court examines six factors to determine whether such exceptional circumstances are present:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the

adequacy of the state forum to protect the federal plaintiff's rights.

*Spectra,* 806 F.3d at 1121 (quotations omitted). Those factors are not applied as a mechanical checklist, but rather are weighed "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* (quotations and citations omitted).

"The first two factors are irrelevant in this case because there is no res at issue, and the state and federal fora are equally convenient." *Id.* The third factor, the risk of piecemeal litigation, is a concern, but it is attenuated because the state and federal proceedings have different defendants and, therefore, severable claims. Compare *id.* at 1121-22. The fourth factor does not particularly weigh in one direction or the other—while the state-court proceeding is farther along, there are issues in this case that have not been raised in state court, and therefore have not progressed at all. Both state and federal law are implicated because Robinson's federal Title VII claim is accompanied by two pendant state-law tort claims. And finally, while the state court is fully capable of protecting Robinson's rights, he has presented claims here against different defendants. On balance, "after taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise," *id.* at 1122, the Court concludes that extraordinary circumstances warranting abstention are not present.[1]

---

[1] None of the foregoing analysis should be read as suggesting that issue preclusion, should it be raised and proved, could not be dispositive of Robinson's claims. *See generally Hara v. Reichert,* 843 N.W.2d 812, 816 (Neb. 2014); *see also, Butler v. City of N. Little Rock, Ark.,* 980 F.2d 501, 506 (8th Cir. 1992); *Swapshire v. Baer,* 865 F.2d 948, 950-51 (8th Cir. 1989); *Brown v. St. Louis Police Dep't of City of St. Louis,* 691 F.2d 393, 396 (8th Cir. 1982). A Nebraska district court's ruling on a petition in error may be a final judgment for purposes

MODIFICATION OF PROGRESSION ORDER

Finally, the Unions seek to modify the progression order, specifically by extending the deposition deadline from July 25 to September 25. *See* filing 21 at 9-10. But that would also require extending the dispositive motion deadline, *see* filing 19, and perhaps the pretrial conference and trial as well. And those are matters generally entrusted to the Magistrate Judge. *See* NECivR 16.1. Accordingly, the Court will refer the Unions' request to modify the progression order to Judge Nelson.

IT IS ORDERED:

1. The Unions' "Motion to Abstain or Stay Proceedings, or Modify Progression Order" (filing 20) is denied in part.

2. The Unions' motion to modify the progression order is referred to the United States Magistrate Judge.

Dated this 11th day of July, 2017.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge

---

of issue preclusion. *Kirkland v. Abramson*, 538 N.W.2d 752, 755 (Neb. 1995); *see Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 562 (8th Cir. 1996). And the finality requirements for issue preclusion under Nebraska law are different from those of the *Rooker-Feldman* doctrine. *See Peterson v. Neb. Natural Gas Co.*, 281 N.W.2d 525, 527-28 (Neb. 1979) (citing *Kometscher v. Wade*, 128 N.W.2d 781, 784-87 (Neb. 1964)).